UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| D'ANGELO S. MCCLURE,            )<br>          Plaintiff,            )<br>                                )<br>     v.                         )<br>                                )<br>ANDREW M. SAUL,                 )<br>Commissioner of Social Security )<br>Administration,                 )<br>          Defendant.            ) | CAUSE NO.: 2:20-CV-137-DRL-JPK |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff D'Angelo S. McClure on April 3, 2020, and Plaintiff's Motion for Summary Judgment [DE 18]. The Commissioner filed a response, and Plaintiff filed a reply.

On June 1, 2020, District Court Judge Damon R. Leichty entered an Order [DE 10] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant briefing pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court reverse the decision of the Social Security Administration and remand for further proceedings.

**PROCEDURAL BACKGROUND**

On October 8, 2013, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning August 29, 2013. The applications were denied initially and on reconsideration. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on June 29, 2016. On July 22, 2016, the ALJ issued an

unfavorable decision, finding that Plaintiff had not been under a disability from August 29, 2013, through July 22, 2016. The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff then filed a civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). On September 4, 2018, Magistrate Judge John E. Martin of the Northern District of Indiana issued an order reversing the July 22, 2016 decision of the ALJ and remanding for further proceedings. The case was assigned to a new ALJ, who held a hearing on September 3, 2019. On December 5, 2019, the ALJ issued an unfavorable decision, making the following findings:[1]

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since August 29, 2013, the alleged onset date.
>
> 3. The claimant has the following severe impairments: deep vein thrombosis, history of pulmonary embolism, epistaxis, Ollier's Disease with exostosis on the bilateral hips, knees, and expansile lesions on the lower extremities, and enchondroma of the right mid and distal ulna; degenerative disk disease of the lumbar spine, degenerative joint disease of the upper and lower extremities, and obesity.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, [the ALJ found] that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), that is, the claimant can lift, carry, push and/or pull up to ten pounds occasionally and less than ten pounds frequently with normal breaks. The claimant can stand and/or walk up to two hours of an eight-hour workday, and sit up to six hours of an eight-hour workday with normal breaks. The

---

[1] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

2

claimant must avoid climbing ladders, ropes, and scaffolds, but can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid exposure to unprotected heights, and must avoid commercial driving. The claimant must avoid exposure to moving mechanical parts, and must avoid work around sharp instruments, such as box cutters and knives. The claimant can have occasional exposure to fumes, odors, dusts, and gases, and poor ventilation. The claimant can sit for 30 minutes, stand for one to two minutes, and then return to sitting. The claimant can elevate legs before work, after work, and during normal breaks.

6. The claimant has no past relevant work.

7. The claimant was born [in 1988] and was 24 years old, which is defined as a younger individual age 18-44, on the date the application was filed.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 29, 2013, through the date of this decision.

(AR 972-88[2]).

The Appeals Council declined to assume jurisdiction, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

---

[2] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the Agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability; (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe; (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations; (4) if the claimant does not meet a listing, whether he is unable to perform his past relevant work; and (5) if the claimant is unable to perform past relevant work, whether he is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

**ANALYSIS**

Plaintiff asserts four grounds for reversal of the ALJ's decision. He contends that the ALJ: (1) improperly dismissed the opinion of a treating physician; (2) erred in arriving at the RFC determination; (3) erred in evaluating Plaintiff's subjective symptoms; and (4) improperly relied on the testimony of the Vocational Expert (VE).

**A. Treating Physician Opinion**

Plaintiff argues that the ALJ erred by failing to provide good reasons for not assigning controlling weight to the opinion of Plaintiff's treating physician, Dr. Harish Shah. (Pl.'s Br. 11-14, ECF No. 18-1).

An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).[3] An ALJ gives a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). "If the ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527([c])(2)). The ALJ must provide "good reasons" in the decision for

---

[3] Medical opinions are weighed by considering the following factors: (1) whether there is an examining relationship; (2) whether there is a treatment relationship, and if so the length of the treatment relationship, the frequency of the examination, and the nature and extent of the treatment relationship; (3) whether the opinion is supported by relevant evidence and by explanations from the source; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

the weight given to a treating source's medical opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Scott*, 647 F.3d at 739; SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).[4]

Here, the ALJ assigned "little weight" to the opinion of Dr. Shah. (AR 982). The ALJ explained that, while Dr. Shah was a treating physician and cardiovascular expert, "his longitudinal treatment history of the claimant [did] not support the limitations espoused in his Medical Source Statement." (AR 982). The ALJ noted that his review of Dr. Shah's physical examinations "indicate[d] grossly normal physical examinations" and a review of Dr. Shah's treatment history "indicate[d] that he advised the claimant to continue his anticoagulant medications, to exercise, and to follow a low sodium diet." (AR 982). The ALJ concluded that "[t]he overall longitudinal treatment history shows [that Plaintiff's] condition has been relatively stable and does not support the limitations in the Medical Source Statement" completed by Dr. Shah. (AR 982).

The Court finds that the ALJ improperly considered Dr. Shah's opinion. While it appears that, in assigning little weight to Dr. Shah's opinion, the ALJ endeavored to consider the factors outlined in the relevant regulations and enumerated in *Moss* as described above, it nonetheless seems that the ALJ ignored evidence contrary to his conclusion and engaged in impermissible "cherry-picking" of the evidence. *See Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018) (ALJ "misconstrued (or worse, cherry-picked)" statements from medical opinion relied upon: "ALJs are not permitted to cherry-pick evidence from the record to support their conclusions, without engaging with the evidence that weighs against their findings"). The ALJ cited three records from February 2018, March 2019, and June 2019, which indicated that Plaintiff had "grossly normal physical examinations." (AR 982 (citing 1641, 1687, 1696)). Yet, office treatment records from Dr. Shah spanning these dates reveal that Plaintiff experienced numerous physical

---

[4] Although SSR 96-2p was rescinded effective March 27, 2017, the new regulations only apply to claims filed on or after the January 18, 2017 effective date of the new regulations. The claims in this case were filed in 2013.

7

symptoms throughout this time. Records indicate that Plaintiff experienced nosebleeds, chest pain, leg swelling, and shortness of breath in February 2018; nosebleeds, leg swelling, and shortness of breath in May 2018; and nosebleeds, chest pain, leg swelling, and shortness of breath in August 2018, November 2018, March 2019, and June 2019. (AR 1640, 1651, 1667, 1676-77, 1686, 1695).

These records directly contradict the ALJ's assertion that Plaintiff's condition was "relatively stable," yet the ALJ neglected to address these negative findings in their entirety. This is especially problematic in light of the fact that the ALJ's stated reason for assigning little weight to Dr. Shah's opinion was because it supposedly showed such relative stability. (*See* AR 982). At the very least, the ALJ should have addressed the records indicating more negative findings, which potentially undercut any claim of relative stability, before reaching his conclusion as to Dr. Shah's opinion. Had the ALJ assigned Dr. Shah's opinion greater weight, it may have fundamentally changed the ALJ's ultimate disability determination, or at the very least changed the RFC. Remand is appropriate in instances where, as here, an ALJ "cherry picks" evidence in support of an outcome, yet fails to address evidence that would undercut the ALJ's ultimate determination. *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (ALJ improperly credited statements in medical opinion "that support[ed] a finding of non-disability" but "ignored others making plain that [the plaintiff] had serious neck and back problems"); *Plessinger*, 900 F.3d at 915. The Court thus recommends remand for proper evaluation of the weight to be given to Dr. Shah's opinion.

### B. Subjective Symptoms

Plaintiff argues that the ALJ erred in evaluating Plaintiff's subjective symptoms. (Pl.'s Br. 14-16, ECF No. 18-1). Plaintiff asserts that the ALJ (1) failed to articulate inconsistencies

8

between Plaintiff's subjective symptom testimony and the record and (2) placed inappropriate emphasis on Plaintiff's daily activities. *Id.*

An ALJ follows a two-step process to evaluate a claimant's subjective complaints. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* at §§ 404.1529(a)-(b), 416.929(a)-(b). Second, once the existence of such a medically determinable impairment is established, the ALJ evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they impose work-related functional limitations. *Id.* at §§ 404.1529(a),(c), 416.929(a),(c). The ALJ's subjective symptom determination "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017).

Initially, the Court notes that the ALJ applied the incorrect evidentiary standard when evaluating Plaintiff's subjective allegations. The ALJ found that Plaintiff's allegations were "not fully consistent with the evidence." (AR 981). But the ALJ is not tasked with determining whether Plaintiff's symptoms are "fully consistent" with the evidence. Rather, the ALJ is instead instructed to determine whether the allegations concerning the intensity, persistence, and limiting effects of these symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence."[5] 20 C.F.R. §§ 404.1529(a), (c)(4), 416.929(a), (c)(4) (describing how the Social Security Administration considers symptoms). To require that symptoms "can

---

[5] The Court notes that the ALJ referenced the correct standard earlier in his decision. (AR 976). However, in discussing Plaintiff's subjective allegations, the ALJ applied the higher, incorrect standard of "fully consistent with the evidence." (AR 981).

reasonably be accepted as consistent" with objective evidence is a less rigorous standard than requiring them to be "fully consistent" with the evidence. *See, e.g., Minger v. Berryhill*, 307 F. Supp. 3d 865, 871 (N.D. Ill. 2018).

Nonetheless, an ALJ's use of an oft-repeated phrase such as "not entirely consistent" is only problematic "when the ALJ substitutes it for a proper, full-bodied explanation of why credibility is lacking." *Hammerslough v. Berryhill*, 758 F. App'x 534, 539 (7th Cir. 2019). This language is not necessarily fatal so long as the ALJ fully explains his decision and a "commonsensical reading" of the entire decision suggests no error. *Clemente A. v. Saul*, No. 18 CV 6345, 2019 WL 3973117, *3-4 (N.D. Ill. Aug. 22, 2019) (declining to find that ALJ's use of boilerplate language tainted the decision with legal error or undermined the entirety of an otherwise-supported symptom assessment where ALJ used the phrase "not entirely consistent" but nonetheless applied the correct standard of "reasonably . . . consistent with the objective medical evidence and other evidence").

Here, it appears that the ALJ may have applied the incorrect standard. Indeed, as noted by Plaintiff, the ALJ did not fully explain the supposed inconsistencies between Plaintiff's allegations and the medical records. For example, while the ALJ noted Plaintiff's testimony that his conditions cause leg swelling and chest pain, he emphasized that most of the emergency room visits concerning these symptoms "did not last 48 hours." (AR 981). It is unclear to the Court how the duration of Plaintiff's stays in the emergency room contradicts his allegations of pain and swelling. The ALJ noted Plaintiff's epistaxis and Ollier's Disease, but stated that "it appears that physical examinations have been essentially normal." (AR 981). The ALJ failed to point to anything else in the record that actually contradicted Plaintiff's subjective allegations, and ignored records that seemed to support those allegations, as explained above. (*See* AR 1640, 1651, 1667, 1676-77,

1686, 1695). It appears to the Court that the ALJ rejected Plaintiff's allegations because the ALJ improperly found them to be not "fully consistent" with the records he cited. As such, the ALJ's brief discussion of Plaintiff's allegations indicates that the ALJ held the allegations to an incorrect "fully consistent" standard rather than a "can reasonably be accepted as consistent" standard.

Regarding Plaintiff's daily activities, it appears to the Court that the ALJ may have improperly emphasized the relationship between these activities and Plaintiff's subjective symptom allegations. The Seventh Circuit Court of Appeals has often warned against equating the performance of daily activities with the ability to perform full time, competitive work. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer."); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Zurawski*, 245 F.3d at 887. Here, the ALJ noted that Plaintiff "was living with family, was able to drive, and was independent in his personal care activities" and concluded that, based upon this evidence and that described above, Plaintiff's allegations were "not consistent with the evidence." (AR 981). The Court fails to see how Plaintiff's living situation, ability to drive, and personal care activities contradict Plaintiff's allegations regarding, *inter alia*, chest pains, leg swelling, and nosebleeds that might impair his ability to engage in full time work.

The ALJ's subjective symptom determination applied an incorrect standard, failed to adequately describe the purported inconsistencies between Plaintiff's allegations and the record, and may have improperly emphasized Plaintiff's daily activities. This was error, or at the very least makes it difficult to determine the ALJ's line of reasoning. Because of this, and since remand

is required on other grounds, the Court recommends that on remand the ALJ be instructed to conduct a proper consideration of Plaintiff's subjective symptom allegations against the applicable standard.

### C. Residual Functional Capacity

Plaintiff argues that the ALJ erred by "playing doctor" in arriving at the RFC determination. (Pl.'s Br. 9-11, ECF No. 18-1). Specifically, Plaintiff asserts that the ALJ improperly rejected a medical opinion finding that Plaintiff needed to elevate his legs often while sitting, and that the ALJ's conclusion that Plaintiff "could elevate his legs prior to work, during normal breaks, and after work as he testified that he is elevating his legs only one to two times per day for one to two hours during a 24 hour period" amounted to playing doctor. *Id.*; AR 982.

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(1); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain,

that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

In arriving at the RFC determination in this matter, the ALJ assigned varying weights to the opinion of Dr. Robert H. Smiley, a medical expert who testified at the hearing. (AR 982). The ALJ assigned great weight to the opinion of Dr. Smiley as it concerned whether Plaintiff's impairments met or equaled a listed impairment—Dr. Smiley found that they did not—yet assigned only some weight to Dr. Smiley's opinion as it concerned whether Plaintiff needed an accommodation to elevate his legs throughout the day. (AR 982). While the ALJ emphasized Dr. Smiley's qualifications and "exacting review of the record" to explain why part of his opinion was afforded great weight, the ALJ offered no explanation beyond "[t]here is nothing in the medical evidence to suggest that the claimant must elevate his legs during normal work hours outside of breaks" to articulate why Dr. Smiley's opinion on leg elevation was not due the same weight.[6] (AR 982).

---

[6] The ALJ additionally noted that, per Social Security Ruling 11-2, accommodations are not considered when assessing work at step five. (AR 982; *see* SSR 11-2p, 2011 WL 4055665, at *9 (Sept. 12, 2011) ("When we determine whether a person can do other work that exists in significant numbers in the national economy, we do not consider whether he or she could do so with accommodations, even if an employer would be required to provide reasonable accommodations under the Americans with Disabilities Act of 1990."). The issue here, however, is not whether the ALJ failed to properly consider accommodations—it is whether the ALJ failed to properly consider the evidence when arriving at the RFC determination at step four. And, here, Plaintiff argues that the ALJ failed to craft an RFC that included proper limitations for Plaintiff's leg-related impairments.

At the hearing, Dr. Smiley testified that he was "relatively certain that [Plaintiff] can work if he has proper elastic support and is allowed to prop his leg up," and specifically that Plaintiff could work a sedentary job "as long as he had the accommodation to prop up his leg *when he needs to prop it up*." (AR 1029-30) (emphasis added). Plaintiff testified that he elevates his leg once or twice a day for one-to-two hours every time the swelling began to create a throbbing sensation. (AR 1027-28). Addressing Plaintiff's need to elevate his leg, the ALJ specifically found that Plaintiff could "accomplish this before work, during normal breaks, and/or after work." (AR 983). He did not explain how this was so, given that Plaintiff allegedly needs to raise his leg when it swells, rather than at predetermined times dictated by an employer. *See* SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) ("An individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms."); *see also Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

The ALJ offered no support for his assertion and eventual RFC determination that Plaintiff could work if he elevated his legs before and after work and during normal work breaks. The ALJ further failed to reconcile this finding with Plaintiff's testimony that he elevated his leg based on when his symptoms worsened, not at specific intervals throughout the day. This was error, and renders the RFC determination unsupported. Accordingly, the Court recommends remand for proper consideration of Plaintiff's physical RFC.

### D.  Vocational Expert Testimony

Plaintiff argues that the ALJ improperly relied upon the VE's testimony regarding the number of jobs in the national economy that Plaintiff could potentially perform. (Pl.'s Br. 5-9, ECF No. 18-1). Plaintiff asserts that the VE was unable to describe his methodology in arriving at the job number estimate, rendering the ALJ's step five determination unsupported by substantial evidence. *Id.* Because the Court recommends remand for other reasons, it does not reach a determination on this issue. The Court notes that, upon remand, proper consideration should be given to the issue of what jobs, if any, exist in the national economy that Plaintiff can perform.

### CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court grant Plaintiff's Motion for Summary Judgment [DE 18], reverse the decision of the Commissioner of the Social Security Administration, and remand for further proceedings.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 8th day of July, 2021.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT